IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LYNDA BAIN EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action NO. 2:04cv561-A |
| | ) | WO |
| BAPTIST HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment filed by the Defendant Baptist Health ("Baptist") on April 1, 2005. Plaintiff Lynda Bain Edwards ("Edwards") brings her federal claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634. Baptist denies Edwards was discriminated against on the basis of age and argues that it is entitled to summary judgment because Edwards fails to establish a prima facie case and cannot challenge Baptist's legitimate, non-discriminatory reasons for her termination. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons to be discussed, the Motion for Summary Judgment is due to be Granted.

**II. SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc).

III. **FACTS**

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

Edwards filed this suit against Baptist over her February 12, 2003 termination. Edwards was sixty-three years old at the time of this termination. Baptist employed Edwards on earlier occasions and had involuntarily terminated her on previous occasions. The first job, in 1982, was an administrative assistant position and lasted approximately one month before she was involuntarily terminated. When Baptist acquired Autauga Medical Center in 1998, where Edwards was employed at the time, Baptist retained Edwards to work as the Human Resource ("HR") Manager for the Prattville Baptist Hospital ("Prattville"). In August/September 2000, Edwards's position as HR Manager for Prattville was eliminated and she was terminated again. Baptist rehired Edwards approximately six months later, on or about March 12, 2001, as the HR Manager for Baptist Medical Center East ("East"), earning approximately $9,000 less than what she had been making at Prattville.

Upon Edwards's re-employment at East, she resumed handling all the HR duties that other HR managers in the system were responsible for performing, including employee relations, new hire orientation, file management, office management, and recruiting. Edwards also assumed certain HR responsibilities over the nearby Brown Springs Facility. In all, Edwards assumed HR responsibilities for two facilities and at least three Pri Med facilities employing a total of approximately 930 employees.

In April 2002, Baptist underwent a system-wide reduction-in-force ("RIF"). This RIF eliminated approximately 200 full-time equivalents ("FTEs"), including at least part of the recruiting staff employed in the HR Department. On October 27, 2002, Baptist promoted Kay Foss to Director of Human Resources. Shortly after her promotion, Foss requested and received a report indicating the average age of the Baptist workforce was between 42 and 43. Foss testified that she sought this information for benefits purposes and "for just [her] own general knowledge." Def. Mot. for Summ. J., Foss Dep. 78:8-9.

In November and December 2002, Foss's supervisor, Chief Operating Officer Sheri Barca, continued to stress the need for additional cost reductions. Barca testified that the troubled financial condition of Baptist was common knowledge among her management team, including Foss. Despite this knowledge, the HR Department moved forward with advertising and hiring a nurse recruiter. According to Foss, that position was open and available as early as December 10, 2002. At least initially, the job was posted and advertised as requiring a background in nursing with a nursing license. Edwards was unaware of any changes to the qualifications for the position. Edwards did not apply for the position because she did not have a nursing license and had been assured recently that Baptist was finished with making personnel reductions. Edwards testified that she would have applied for the nurse recruiter position if she had known her job was in jeopardy and that the requirement of a nursing license had been removed.

On December 20, 2002, Laurie Matthes responded to Baptist HR Department's advertisement in the Montgomery Advertiser for a nurse recruiter position. At that time, the advertisement did not require a nursing license, but rather, a health care background. Matthes,

who did not possess a nursing license, was offered and accepted the job on or about January 10, 2003 (the date on Baptist's "New Hire Worksheet"), began working on January 27, 2003, and attended orientation on February 3, 2003.

In early January 2003, Foss discussed with Patti Foshee some changes that Foss was contemplating with respect to Edwards and Foshee's duties and responsibilities. Foss recalls that at the end of January Barca asked her to make recommendations about cost cutting. Barca does not remember the exact time frame, but testified that it could have been in the latter part of 2002 or very early in 2003. On January 28, 2003, Foss circulated an e-mail to her management staff requesting that they forward to her any ideas they had on cost reduction by no later than noon, January 29, 2003. No one on Foss's management staff recommended job elimination as a viable cost-cutting method. Foss was the only HR employee to suggest FTE eliminations.

In late January or early February, Foss made a recommendation to Barca to eliminate half a FTE (.5) at East and half a FTE (.5) at Prattville, thereby sparing Edwards's job, albeit reducing her to a part-time capacity. Foss claims, however, that Barca instructed her to go further by completely eliminating the position at East and leaving open the position at Prattville in order to achieve a 1.5 reduction in FTEs. Barca testified that to the best of her knowledge she did not make any recommendations to Foss about terminating employees.

On February 12, 2003, Foss informed Edwards of Foss's decision to terminate Edwards's employment. Edwards asked why Baptist had just hired a new nurse recruiter to which Foss responded that she "did not know it was going to happen." Def. Mot. for Summ. J., Edwards Dep. 79:3-6. When Edwards inquired about who would handle the HR duties at

5

the East facility, Foss responded that "Robin [Barca] thinks that Patty [Foshee] can handle both of it [sic]." Id. at 78:8-9. Edwards also asked about whether there were other positions in the company she could move into. Foss indicated that she did not know of any open positions but suggested that Edwards could look at the listings on the internet. Foss told Edwards that she would be happy to give Edwards a reference if she wanted because she had done everything that Foss had ever asked Edwards to do and that it was nothing against her work or anything else. Edwards asked where she would find a job at her age, to which Foss replied that Edwards did not look her age.

## IV. DISCUSSION

The ADEA makes it unlawful for an employer to discharge any individual over the age of forty because of that individual's age. 29 U.S.C. § 623(a). Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of age by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. Id. at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256; Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert denied, 522 U.S.

1045 (1998).  A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

In cases arising under the ADEA, the Eleventh Circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims.  See Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996).  A plaintiff states a prima facie case for violation of the ADEA upon a showing that he or she (1) is a member of the protected age group between the ages of forty and seventy, (2) was subject to an adverse employment action, (3) was replaced by a person outside the protected group and (4) was qualified to do the job.  Id. at 1531 (citing Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989), cert. dismissed, 493 U.S. 1064 (1990)).  These criteria are altered in both a RIF case and where a position is eliminated in its entirety; in these instances, a plaintiff must demonstrate "(1) he or she was in a protected group and was adversely affected by an employment decision, (2) that he or she was qualified for the current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision."  Id. at 1531-32 (citations omitted).

Both parties contend, and this court finds, that the RIF modified prima facie test is appropriate for evaluating Edwards's claim.  With respect to the first prima facie requirement, it is undisputed that Edwards is within a protected group and was adversely affected by an employment decision.

As to the second prima facie requirement, Edwards provides evidence that she was qualified for the position from which she was eliminated. Nonetheless, "[w]here a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1082-83 (11th Cir. 1990) (citations omitted). Essentially, without a showing that there was an open position for which Edwards was qualified at the time of Edwards's discharge, Edwards cannot establish the second prong of her prima facie case. See id. at 1083 n. 4 (holding that "[i]f plaintiffs need prove only that they were qualified for some available position at any earlier or later time, virtually every plaintiff would be able to meet this requirement of a prima facie case.").

The parties agree that there were no positions for which Edwards was qualified that were open at the precise time of Edwards's termination, February 12, 2003, and that Edwards did not apply for any open positions, if there were any, elsewhere within the system. Nonetheless, Edwards attempts to establish the second prong of her prima facie case by arguing that a genuine issue of material fact exists as to when the decision to eliminate her position was made and as a result a jury could find that the decision to terminate her was intentionally delayed until there were no open positions. Although not binding on this court, Edwards cites Krist v. Gates Power Drive Products, 952 F. Supp. 768 (M.D. Ala. 1996), for support. In Krist, even though there were no job openings at the time of plaintiff's termination, a new position description was prepared, reviewed, and signed three weeks after the alleged discriminatory termination. Id. at 771. The Krist court reasoned that:

> [t]he fact that the description was finalized three weeks after [Plaintiff's] departure suggests that the [open] position was contemplated prior to [the finalization date]. Based upon the date of the final review and related inferences, the court finds that the [open] position was available close enough to the time of [Plaintiff's] termination to satisfy the RIF prima facie second prong.

Id. Essentially, by finding the position available "close enough to the time of [Plaintiff's] termination," the Krist court found that the job position was constructively available at the time of plaintiff's termination. See id.; see also Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1103 n. 13 (8th Cir. 1996) (holding that the district court did not commit plain error when it failed to instruct the jury that the plaintiff was required to apply for an open position as part of his prima facie case, in part, because plaintiff "presented evidence tending to show that his supervisors knew they were going to eliminate his position [as a sports promotion coordinator] at the same time that they were surveying candidates for the available job as a sports promotion coordinator. [Plaintiff], though, did not learn that he was going to be fired until after the post had already been filled.") (emphasis in original)).

The facts here present a converse of the facts in Krist. In Krist, the plaintiff argued that the available job position was contemplated at the time of his earlier termination, whereas here, Edwards argues that her termination was contemplated at the time of the earlier available job position. See id. As an initial matter, Edwards produces evidence that she was qualified for the nurse recruiter position filled by Matthes in early January 2003. See Def. Mot. for Summ. J., Edwards Dep. 78:5, 128:7-21, 130:2-16. Next, Edwards alleges that her February 12, 2003 firing was part of a cost cutting program contemplated in late 2002 or early 2003, when the nurse recruiter position was open, but Foss intentionally delayed firing her until after Baptist filled the nurse recruiter position. Edwards relies on Barca's statements that expense

9

reductions were examined in the "late part of '02" or "very early '03" to support the argument that her termination was contemplated before the nurse recruiter position was filled in early January.  See Def. Mot. for Summ. J., Barca Dep. 59:22-60:6.  As a result, Edwards argues that the nurse recruiter position for which she was qualified was available "close enough to the time" of her termination to satisfy the RIF prima facie second prong.  See Krist, 952 F. Supp. at 771.

Assuming, without deciding, that Edwards can meet the second prong merely by showing a constructively available position, this court finds that Edwards's evidence with respect to whether the position was available "close enough to the time" of her termination fails to establish the necessary "related inferences" that could create a triable question of fact.  See id.  First, Edwards's argument that Foss and Barca's testimony regarding the RIF time frame conflict with each other is undermined by Barca's testimony that she is uncertain of the exact time frame.  When asked as to when cost cutting directives were given, Barca repeatedly states that she "can't remember specifically when the requests came out," and "[i]t could have been very early '03.  I don't remember the exact time frame."  Def. Mot. for Summ. J., Barca Dep. 59:22-60:6.  Foss, on the other hand, testified that directives to look for cost cutting measures came at "[t]he end of January.  I cannot tell you a specific date," which would have been the time of the month she e-mailed a request for cost-cutting suggestions and at least half a month after Matthes filled the nurse recruiter position.  See Def. Mot. for Summ. J., Foss Dep. 59:6-10; 98:18-100:20.

Second, even crediting Barca's earlier time frame, thereby accepting Edwards's argument that as early as late 2002 or very early 2003 Baptist knew that it needed the RIF that

10

resulted in Edwards's February termination, Barca's cost saving directives were merely general statements completely unrelated to Edwards or her position. Barca testified that her awareness "at the end of '02" was merely "from a systems standpoint, we knew . . . that we were not where we needed to be from a bottom line financial standpoint." Def. Mot. for Summ. J., Barca Dep. 59:5-8. In other words, the only evidence that the decision to eliminate Edwards's job was made before Foss's February decision is Barca's general statement that budget savings were needed. Undisputed evidence reveals that Barca directed managers such as Foss to look into savings, but the directives did not specifically relate to terminating employees, much less to terminating Edwards or her position in particular. See id. at 59:5-18. Rather, Barca testified that references to cost saving measures, "w[ere]n't necessarily in FTEs. It could have been in supplies. It could have been in a reduction of services. It could have been a change in hours of services. I mean, it was a variety of different things that could have occurred." Id. at 59:12-18. Even Edwards states that "Foss admits that she was not initially directed by Barca to cut FTEs, nor was she given any specific directive to achieve any certain level of savings." Pl. Resp. Br. at 11 (citing Def. Mot. for Summ. J., Foss Dep. 60:6-8, 98:18-99:2). No evidence exists that Barca's statements to cut costs specifically contemplated terminating Edwards or her position.

Third, Foss, not Barca, decided how to implement any cost cutting measures for the department Edwards was in. See Def. Mot. for Summ. J., Foss Dep. 60:6-8, 98:18-99:2; Barca Dep. 68:22-69:9. Even Edwards argues it was Foss, not Barca, who made the specific decision to cut costs by terminating Edwards. See Pl. Resp. Br. at 13 (citing Def. Mot. for Summ. J., Barca Dep. at 68:4-7 ("Q: Did you make any recommendations to her [Foss] to the

11

best of your knowledge about terminating employees? A: No I did not.")); see also Def. Mot. for Summ. J., Foss Decl. ¶ 14 (declaring that "*I determined* that Ms. Foshee and I could cover the additional employee relations issues, termination reviews, and other functions . . . ." (emphasis added)).

In summary, Edwards argues that "[b]ecause a reasonable trier-of-fact could infer that Foss delayed issuing her January 28 email, until after Mathis [sic] began employment, a genuine issue of fact exists regarding the availability of the nurse recruiter's position." See Pl. Resp. Br. at 19. This court disagrees. Edward's sole evidence that her termination was contemplated at the time of an open position for which she was qualified comes from a general statement by Barca, a Baptist employee who even Edwards admits was not the one who decided to terminate her. It is undisputed that Barca merely requested general expense reductions. It is also undisputed that it was Foss who solicited suggestions for specific cost cutting measures in Edwards's department on January 28, 2003, and that it was Foss who made the department's cost saving determinations. Without more, Barca's general statements that she knew in late 2002 or early 2003 that the company was "not where we needed to be from a bottom line financial standpoint." see Def. Mot. for Summ. J., Barca Dep. 59:7-8, fall far short of establishing a jury question.

Ultimately, without showing that there was an open position for which she was qualified at the time of her discharge, Edwards cannot establish the second prong of her prima facie case. See Earley, 907 F.2d at 1083 n. 4. There is undisputed evidence that Matthes completed Baptist Health's "New Hire Worksheet" on January 10, 2003, see Def. Mot. for Summ. J., Exh. C: Personnel File of Laurie Matthes, and Baptist terminated Edwards over a month later on February 12, 2003. Edwards's argument that a jury could find that Baptist

delayed terminating Edwards until after it filled a position for which she was qualified, is simply untenable in light of the uncontroverted evidence before the court. Here, as in Earley, nothing shows that the available position for which Edwards was qualified was open at the right time: it was open and filled well before the time of Edwards's termination. See 907 F.2d at 1083. As a result, the court finds that Edwards fails to establish the second prong of her prima facie case and summary judgment is due to be Granted.[1]

Even if the court were to assume that Edwards could establish all of the elements of a prima facie case, Edwards fails to show that Baptist's proffered legitimate, non-discriminatory reason for the termination, the RIF,[2] was a mere pretext for discrimination on the basis of age, to eliminate older employees, and specifically Edwards.

As evidence of Baptist's alleged intentional age discrimination, Edwards proffers Foss's admission that she requested and received statistics regarding the average age of the workforce. Def. Mot. for Summ. J., Foss. Dep. 77:10-12. Specifically, shortly after October 27, 2002, Foss requested and received a report indicating that the average age of the Baptist

---

[1] In a conclusory footnote in the section of Edwards's response brief discussing her RIF second prong evidence, Edwards adds that "[a]lthough unnecessary," she "also relies upon the history of mistreatment by Baptist" to meet the second prong of her prima facie case. See Pl. Resp. Br. at 22 n. 12. The court finds this laundry list of assorted grievances completely superfluous to the determination of whether Edwards has shown that a position for which she was qualified was available in the company at the time Baptist terminated her position, see Krist, 952 F. Supp. at 771 (citing Earley, 907 F.2d at 1083; Jameson, 75 F.3d at 1532; Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565, 568 (11th Cir. 1992)).

[2] It is well established that the elimination of an employee's position due to a RIF is a legitimate, non-discriminatory reason for a discharge. See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1427 (11th Cir. 1998); Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1070 (11th Cir. 1995); Earley, 907 F.2d at 1084 n.5.

workforce was between 42 and 43.  Id.  Foss testified that she "requested the number because we were looking at trying to add additional benefits at no cost to Baptist Health for our employees.  And I wanted to know what our average age was so that we could kind of surround those benefits around what we felt would best serve our employees and for just my own general knowledge."  Id. at 78:3-9

Edwards entreats the court to infer that the report constitutes evidence of Foss's intent to discriminate against older employees, thereby rebutting Baptist's alleged non-discriminatory RIF.  As the court in Krist stated, however, "[n]ot every document containing employee birth dates constitutes evidence of an employer's discriminatory intent."  952 F. Supp. at 772 (citing Earley, 907 F.2d at 1082).  The report compiled by Foss lacks any indicia of an alleged "hit list."  See, e.g., id. at 772 (discussing a "hit list" of thirteen employees, ten of whom were within the ADEA protected group).  In the instant case, it appears that the report did not focus on the ages of specific employees, but rather on the average age of the workforce in general.[3]  Nonetheless, even if the report did list employee's birth dates,

---

[3] The court bases this conclusion on the following colloquy during Foss's deposition:

> Q:  Are you aware of any analysis, study, comparison that evaluates the ages of the work force in the Baptist System?
> A:  Shortly after coming to the position of director I requested a report indicating the average age of our employee set.
> Q:  Who did you make that request to?
> A:  Christy Wombulls.
> Q:  And you got the report?  That was produced to you?
> A:  *I received an age, an average age*.
> Q:  What was average age?
> A:  It was between 42 and 43.
> Q:  Do you know where that report is today?
> A:  *I don't know that it was even a report.  I think I just ended up with a figure*.

"[e]mployers can use employees' birth dates and age compilations as part of management's effort to evaluate natural attrition and as part of a restructuring and RIF plans." Id. (citing Earley, 907 F.2d at 1082). There is no evidence to suggest this report was connected to restructuring or RIF plans, rather, Foss testified that the report, requested over three months before Edwards's February 12, 2003 termination, was for benefit purposes. Def. Mot. for Summ. J., Foss Dep. 78:3-9. As the Earley court warned, plaintiffs must avoid producing documentary evidence that is "'so attenuated and weak' as to be at best merely colorable and not significantly probative." 907 F.2d at 1082. This court finds that the fact that Foss requested and received merely the average age of the workforce in general, months in advance of the RIF at issue here, is "so attenuated and weak" that no fact finder could reasonably conclude from this evidence that Baptist intended to discriminate against Edwards on the basis of her age. See id.

Edwards's remaining arguments do not provide the court with evidence, but rather, with conclusory allegations. Edwards argues that: she was better qualified; her termination was wrong in light of the fact that her HR department was severely understaffed and raises were given to executives in early 2002; her duties were reassigned to substantially younger employees; and Baptist should have used an informal bumping process. The court will address each in turn but notes that it is well settled that mere conclusory allegations do not create a genuine issue of material fact. See id. at 1081 (citations omitted).

---

Foss Dep. 77:7-21 (emphasis added).

To the extent that Edwards is arguing that she, rather than other employees, should have been retained by Baptist since Edwards was better qualified, this argument is unavailing. "The ADEA imposes no requirement upon an employer to take a younger, less experienced employee out of a job in order to make room for an older employee who is being subject to layoff." See Stubblefield v. Trinity Indus., Inc., 961 F. Supp. 1553, 1557 (M.D. Ala. 1997) (citing Earley, 907 F.2d at 1083). Merely questioning the wisdom of an employer's choice to retain one employee over another does not provide the court with evidence of discrimination. See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1255 (11th Cir. 2000); Tidwell, 135 F.3d at 1427.

Additionally, Edwards's arguments that the HR department was not overstaffed, but rather drastically understaffed, and that other employees were overcompensated are unpersuasive. As the Eleventh Circuit noted in Earley, "[t]he essence of a RIF is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." 907 F.2d at 1083 (quoting Healy v. New York Life Ins., 860 F.2d 1209, 1220 (3d Cir. 1988)). See also Beaver v. Rayonier, Inc., 200 F.3d 723, 728 (11th Cir. 1999) (holding that an "employer is free to choose whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions."); Combs, 106 F.3d at 1543 (holding that "federal courts do not sit to second-guess the business judgment of employers.").

To the extent Edwards argues that her position was not eliminated, but instead was taken over by younger employees, this court finds that based on undisputed evidence, at most, Baptist employees merely assumed some of Edwards's duties. See Def. Mot. for Summ. J.,

Foss Decl. ¶¶ 15-16; Foss Dep. 103:9-105:11; Foshee Dep. 29:13-31:20.  Without more, Edwards's claim that her duties were reassigned to two substantially younger employees is not enough in itself to establish a prima facie case.  See Minton v. Am. Bankers Ins. Group, Inc., No. 02-12942, 2003 WL 21303330 at *1 (11th Cir. Feb. 6, 2003) (affirming summary judgment for employer on ADEA claim that found employee was not replaced when coworker merely absorbed some of plaintiff's duties); Stubblefield, 961 F. Supp. at 1558 (citing Barnes v. GenCorp, Inc., 896 F.2d 1457 (6th Cir.), cert. denied, 498 U.S. 878 (1990)) (holding a person is not replaced when another employee is assigned to perform that person's duties in addition to other duties)).

While Edwards acknowledges that Baptist has no formal bumping process, she alleges that during past position eliminations, where a different position is being filled and the person who is being eliminated is qualified for the different position, it was the hospital's practice to allow incumbent employees to fill the vacancy.  Edwards recalls a specific instance in which she was instructed to withdraw an offer to an outside applicant after the applicant had accepted an offer of employment in order to allow an incumbent employee to transfer into the vacant position.  Pl. Resp. Br., Exh. E: Edwards Decl. ¶ 6.  While Edwards submits a declaration attesting to one instance of past bumping, she acknowledges this is not Baptist's formal process.  Id.  The ADEA "does not mandate that employers establish an interdepartmental transfer program during the course of an RIF, . . . or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course."  Jameson, 75 F.3d at 1532-33 (citations omitted).  As a result, the fact that Baptist failed to

bump an employee for Edwards's benefit is not sufficient evidence to establish that age was a factor in the elimination of Edwards's position.

Ultimately, this court finds that there was no open position for which Edwards was qualified at the time her position was eliminated and that Edwards fails to create a triable question of fact as to whether there was a job position contemplated at the time of her termination, thereby failing to establish the second prong of her prima facie case. Even if the court were to assume that a position was open "close enough to the time" of her termination, see Krist, 952 F.2d at 771, by failing to produce evidence by which a fact finder could reasonably conclude that Baptist intended to discriminate on the basis of age in reaching its employment decision, Edwards cannot rebut Baptist's legitimate, non-discriminatory reasons for the elimination of her position. As a result, summary judgment for Baptist is due to be Granted on this alternative basis.

## V. CONCLUSION

For the reasons discussed above, the Defendant's Motion for Summary Judgment (Doc. # 17) is due to be Granted. A separate judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 3rd day of June, 2005.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE